† HUNT, *in Equity, versus* ROBERTS.

Where the parties interested in a bond for the conveyance of real estate, agreed with the defendant, by parol, that he might have an interest in one half of the bond, by making the first payment, and also to hold the title of the other half of the land for security for money loaned them to make the payments for their moiety, by giving a bond to each of them to convey, by deed, one quarter of the premises on being reimbursed for his advances; and such payment was made and the title of the land transferred to defendant, in a suit in equity to compel performance of said contract, it was *held*, that the Court had no jurisdiction to enforce it; —

1. Here was no trust expressed by any writing of the party sought to be charged.
2. Nor did the plaintiff furnish the money whereby a trust could be implied.
3. Nor was the title obtained by the defendant through any fraud, as he held it by consent.

BILL IN EQUITY.

The bill set forth, that on Sept. 18, 1846, one Benj. Dyer, and the plaintiff, were jointly interested in a bond for the conveyance of land, by William Willis : — *that,* being desirous to comply with its requirements, and the defendant wishing to become interested therein, it was agreed that in consideration of his furnishing the money for the first payment, he should have an undivided half of the land, and should hold the title of the other as security for money necessary to pay for the other half of the land, which he was to loan said Dyer and the plaintiff, upon the security of the land — and that he was to give a bond to them conditioned to convey to each one quarter of the tract, whenever

the respondent should be fully paid and indemnified for the money then advanced, or which he might subsequently pay towards the half belonging to Dyer and plaintiff out of the stumpage or other moneys arising from said land, or in any other mode.

That it was agreed, that one Ingersoll, acting for those interested, should forthwith proceed to Portland, with the money necessary for the first payment, that said Dyer, jointly interested with the plaintiff, should go with him and close up the contract with Willis, and that on the return of Ingersoll, the title was to be in Roberts, who was to give a bond to said Dyer and plaintiff.

That said Dyer, acting for plaintiff as well as himself, went with Ingersoll to Portland, carrying the money for the first payment, took up the bond from Willis, Dyer giving his notes for the balance, and receiving a deed of the premises and giving back a mortgage to secure his note for the balance due on the purchase.

That at that time Dyer was insolvent, and Ingersoll, fearing that his equity of redemption might be attached, and thereby deprive the defendant from redeeming the one half, and lose his security for his advance money for the benefit of Dyer and plaintiff, induced Dyer to execute a release of the premises to defendant, promising that defendant should execute a bond securing the rights of said Dyer and plaintiff, and that he would see the same done when he returned to Bangor.

That such release was executed and placed in the hands of Ingersoll, to be delivered to defendant on condition that he should give the bond to said Dyer and plaintiff before stated, and that Ingersoll received said deed upon *such* condition and no other.

That on said Ingersoll's return to Bangor he was met by respondent, to whom he communicated what was done and agreed upon, to which the defendant assented, but fearing an attachment against Dyer, he was urgent that the deeds should forthwith be recorded, and agreed that the bonds

should immediately be given, and thereupon Ingersoll caused all the deeds to be recorded.

That shortly after, defendant, instead of giving Dyer a bond, purchased of him his said quarter and paid $600 therefor.

That soon after the return of Ingersoll, plaintiff called on defendant for his bond, but he fraudulently refused to give it or comply with the conditions on which he received the deed.

That Roberts entered into possession of the premises, and has received large sums of money from the timber and hay cut on said land, and in other modes from the avails of said land.

The bill also alleged repeated demands for an account, and for a bond, and an offer to pay what was equitably due.

The bill prayed for a bond in accordance with the agreement, and for a deed of release of one fourth of the premises.

To this bill the defendant filed a general demurrer.

*Rowe & Bartlett,* in support of the demurrer, maintained that the Court had no jurisdiction. The bill was for the performance of a contract not alleged to be in writing. R. S., c. 96, § 10.

That the chancery jurisdiction of this Court being limited, it should appear affirmatively in the bill, that the case stated is within its jurisdiction. When the case stated is doubtful, the presumption that it is within its powers exists only in courts having general equity jurisdiction. *May* v. *Parker,* 12 Pick. 34.

That it has no equity powers to compel a specific performance of a parol agreement, or to render judgment for damages sustained by a breach thereof, has been settled in *Wilton* v. *Harwood,* 23 Maine, 131.

That no fraudulent practices were imputed to the defendant in obtaining the property, and therefore the case came within the principle of that decision.

*Kent,* for plaintiff, supported the bill on two grounds.

1st. Here was a trust, an implied one — there being no writings except the bond and deeds. Where the money is paid by one man and the deed taken by another, a trust results by implication of law. *Buck* v. *Pike,*. 2 Fairf. 9; *Baker* v. *Vining*, 30 Maine, 121. The money advanced by defendant, may be regarded as a loan to Dyer and plaintiff; being so, one half was Hunt's. Dyer took Hunt's money to pay, and for his proportion took it in trust. *Phillips* v. *Cramond*, 2 W. C. C. R. 441; *Freeman* v. *Kelley*, 1 Hoff. Ch. 90; Hill on Trustees, 126.

It is not necessary that the funds should be those of the *cestui que trust*. *Gomer* v. *Tradesman's Bank*, 4 Saund. S. C. 106; or they may be supplied by the nominal purchaser. *Page* v. *Page*, 8 N. H. 187.

Roberts had no assignment of the bond, nor any interest in it. No title or security was to be given to him until Ingersoll returned to Bangor. In all the transactions at Portland, Dyer acted for the plaintiff and himself. The facts, as between Dyer and plaintiff, show a trust. And the facts set forth show also that Roberts took the deed charged with the trust. He had notice of it and is bound to perform it. *Manning* v. *Gloucester*, 6 Pick. 6; *Safford* v. *Rantoul*, 12 Pick. 233; *Earl Brook* v. *Buckley*, 2 Ves. 498.

But, as between Dyer and this plaintiff, the trust was in writing, in the assignment of the bond from Dyer to Hunt. That bond was not by law assignable. The legal title and right remained in Dyer, but he held the other half as trustee. Of all these proceedings the defendant was cognizant. So that the bill may be supported on one of these grounds.

2. But here was fraud, in the doings at Bangor on the return of Ingersoll. The agreement was that when Roberts took the deed, he was to give back a bond. He obtained the deed by a fraudulent pretence and promise, operating upon Ingersoll. Was not this an actual fraud? The case is clearly distinguishable from that of *Wilton* v. *Harwood*.

*Rowe*, in reply. The money was Roberts' and was paid under an express contract. The law can imply no other or

different one.   Nothing is left to implication.   If Dyer held
the land as trustee of Hunt, Roberts took it discharged of
that trust.   He violated no trust in receiving his deed.   It
was done with plaintiff's consent.   The complaint is, that
Roberts will not perform his part of the contract with plain-
tiff.   If any trust exists under it, there must be some writ-
ing signed by defendant.   R. S., c. 91, § 31.   As to fraud,
no such charge is preferred in the bill.   There is no pre-
tence that he procured the conveyance to himself by fraud.

TENNEY, J. — The plaintiff prays, that the defendant may
be ordered and decreed to make and execute a bond, to
convey to him his interest in the land described in the bill,
upon the terms and conditions set forth, as the verbal
agreement between the plaintiff and Benjamin Dyer, and
the defendant; and that he be ordered and decreed to con-
vey by deed of release to the plaintiff, one quarter part of
the same land, on being paid such sum as the Court shall
decree to be equitably due, which sum he offers in the bill
to pay.

The defendant files a general demurrer to the bill, and
denies that the Court have jurisdiction of the case, upon
the ground, that the bill is for the specific performance of
a contract not alleged to be in writing.   R. S., c. 96, § 10,
clause fourth.   It is insisted for the plaintiff, that the Court
have power to grant the relief under two heads of equity
jurisdiction, as a case of trust and fraud.   And it is con-
tended, that the money, which it is alleged in the bill was
paid to William Willis, to obtain the deed that was deliv-
ered to Dyer, was a loan by the defendant to the plaintiff
and Dyer, and created an implied or resulting trust.   This
proposition cannot be admitted.   By the agreement, as
stated in the bill, to which the plaintiff, Dyer and the de-
fendant were parties, on the payment of the sum of about
$808, by the defendant, which was all that was paid to
Willis, a conveyance of the land described in the bond was
made to Dyer, and he at the same time gave his promissory

note for the balance of the purchase money, secured by a mortgage of the same land; and Dyer thereupon gave a deed of release of the right in equity of redemption to the defendant. According to the allegations in the bill, it was verbally agreed by the parties named, that in consideration that the defendant should thus obtain the title in the land, acquired from Willis under the bond, he should immediately after give his bond to the plaintiff and Dyer, to convey to them each one quarter part of the land, whenever he should be fully paid or indemnified for money then advanced, or which he might subsequently pay, towards the part belonging to them, &c.

If this verbal agreement had been in writing, and signed by the defendant, it might have been an effectual declaration of a trust, according to R. S., c. 91, § 31; and if so, it could not have been at the same time, merely a loan of the money which was paid to obtain the deed. And it is not perceived, that it can become a loan, because that which was intended to be the same contract, should fail, because not so executed as to constitute an express trust. Such a construction as that contended for, would in effect defeat the statute, and a supposed trust under an express verbal agreement, when not legally declared, would become entirely effectual, as an implied trust, in another mode.

It is again contended, that the assignment by Dyer of an interest in the bond to the plaintiff, created a trust, which was declared in writing, and signed by the party, and this being fully known to the defendant, at the time he advanced the money and became the owner of the equity of redemption, he was bound to execute that trust. If the plaintiff had furnished one half of the money paid to obtain the deed, and the right in equity had remained in Dyer, the latter might have been considered as holding a moiety of the interest thus acquired in trust for the plaintiff. But under the verbal agreement alleged, the title having passed immediately from Dyer to the defendant, in consideration of the money advanced, and the bond from Willis

having been cancelled, by the consent of the plaintiff, Dyer held no estate in trust, before his release, and the defendant took the conveyance, subject only to his verbal contract, and consequently charged with no trust.

Is the plaintiff entitled to relief, on the ground that the defendant fraudulently refused to give to him the bond, after having obtained the right in equity of redemption of the land? It is insisted that this case is something more than a part performance of the verbal contract; that Ingersoll having authority to deliver the deed from Dyer to the defendant, only on the fulfilment of the condition, that the bond should be given to the plaintiff, he was persuaded by the defendant to deliver the deed, under the promise that the bond should be given immediately after. It is alleged in the bill, that after the delivery of Dyer's deed to the defendant, the bond was demanded by the plaintiff, and no objection made that the deed was not fully effectual; but the fraud relied upon, is the refusal to execute and deliver the bond.

This case does not differ essentially from the case of *Wilton* v. *Harwood,* cited for the defendant, in the principles involved. It is stated in the opinion of the Court in that case, " if the Court were to decree specific performance of a verbal contract for the sale of real estate, on the ground, that after part performance, it was a fraud upon one party, for the other to refuse to execute a conveyance, the effect would be to assume under this clause of the statute, the very jurisdiction, intentionally denied under another and more appropriate clause." The plaintiff having consented that the title should be in the defendant, in consideration of a verbal agreement, that he would execute the bond according to that agreement, and having failed to obtain the bond, he cannot have redress in a mode which the law does not authorize. *Demurrer sustained. —*
*Bill dismissed with costs.*